UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEROY SIMPSON,<br><br>        Plaintiff,<br><br>vs.<br><br>CORIZON, LLC,<br><br>        Defendants. | Case No. 1:19-cv-00290-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Corizon's Motion for Summary Judgement. Dkt. 18. Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT Corizon's Motion.

## II. BACKGROUND

Plaintiff Leroy Simpson is incarcerated at the Idaho Correctional Institution in Orofino, Idaho. On July 24, 2019, Simpson filed a *pro se* Complaint under 42 U.S.C. § 1983, alleging Corizon provided him with inadequate medical care in violation of the Eighth Amendment. Simpson's Complaint states that he has a painful hydrocele in his

scrotum.[1] Simpson does not seek damages, but rather requests injunctive relief ordering Corizon to surgically remove the hydrocele.

Simpson's Complaint is devoid of factual details regarding his claim. Further, he did not submit a separate statement of facts with his Response to Corizon's Motion for Summary Judgment as required by the Local Rules. Accordingly, the Court must rely on Corizon's recitation of the relevant facts. Corizon's Statement of Undisputed Facts outlines the following details of Simpson's health concerns.

On January 21, 2019, Simpson submitted a Health Services Request ("HSR") concerning an enlarged testicle, which he thought may be a hernia. On January 24, 2019, Simpson was seen by Physician Assistant Joseph Starrs. During the visit, Simpson stated that his scrotum has been enlarged since the age of 13, but denied experiencing pain or other problems.[2] PA Starrs determined the condition was a scrotal mass "with a 20+ year history" and that were no concerning symptoms. Dkt. 18-2, ¶ 3. PA Starrs then put in a request for an offsite ultrasound, but, in a subsequent visit, PA Starrs informed Simpson that an ultrasound was not medically necessary since Simpson had been stable for over 20 years. On April 2, 2019, Simpson submitted an HSR, in which he complained of pain in what he thought was a hernia. Medical staff then scheduled an ultrasound.

On April 24, 2019, Simpson was seen offsite at St. Mary's Clearwater Hospital for a left scrotal ultrasound, which revealed a 9 cm hydrocele but otherwise no abnormalities

---

[1] A hydrocele occurs when fluid fills the scrotum, causing swelling. *Hydrocele*, CLEVELAND CLINIC (Dec. 09, 2020), https://my.clevelandclinic.org/health/diseases/16294-hydrocele.

[2] Simpson's Reply on November 16, 2020, clarified that he has had the condition since 2013, and not since he was 13 years old. Dkt. 22.

in the testicles. On May 1, 2019, during a follow up visit with PA Starrs, Simpson stated that he had actually only had the condition for 10 years, not 20. PA Starrs informed Simpson that the hydrocele was benign, but would be monitored and directed Simpson to take ibuprofen when needed. On June 29, 2019, Simpson submitted another HSR inquiring what could be done about the hydrocele. *Id.* On July 15, 2019, in another follow-up visit with PA Starrs, Simpson requested a surgical consultation regarding the hydrocele, but PA Starrs placed Simpson on a conservative treatment plan because the pain and swelling did not interfere with Simpson's activities of daily living ("ADLs"). Additionally, PA Starrs felt the risks of surgery, including infection and loss of function, outweighed the benefits.

On October 24, 2019 and October 30, 2019, Simpson submitted two more HSR's stating that the swelling and pain had increased. On November 18, 2019, PA Starrs submitted a request for surgical evaluation for the hydrocele, because Simpson had indicated that the pain and swelling was starting to interfere with his ADLs, and particularly with getting dressed. On November 26, 2019, Simpson was seen by Dr. Clayton Bunt, MD, regarding the pain and swelling and Dr. Bunt then requested an offsite surgical consultation.

After the consultation was approved, Simpson was seen by an offsite surgical specialist, Karin Schmidova, MD, at Clearwater Valley Medical Clinic on December 18, 2019. Dr. Schmidova reported nothing urgent regarding the hydrocele, but recommended that Mr. Simpson be seen by a urology specialist. Simpson refused this follow up appointment. After another referral to a urology specialist from PA Starrs, Simpson was seen by the offsite urology specialist, David Rice, MD, at Valley Medical Center. Dr. Rice

reported that Simpson had "odd complaints" regarding the hydrocele and stated, "historically reviewing records he has had significant complaints which I don't think are attributable to hydrocele." Dkt. 18-2, ¶ 18. Dr. Rice concluded that the hydrocele condition was not emergent and did not need to be fixed. Additionally, Dr. Rice explained that because surgery to remove the hydrocele would be elective, the surgery could not be performed during the pandemic. Simpson is continuing to be monitored and treated onsite.

In his Complaint, Simpson alleges that during his incarceration at the Idaho Correctional Institution-Orofino, Corizon was deliberately indifferent to his serious medical needs in failing to order surgical removal of the hydrocele. Specifically, Simpson alleges that Corizon's "failure to treat a prisoner's condition could result to farther [sic] significant injury." Dkt. 3. Simpson explains Corizon's refusal to remove his hydrocele is causing him pain and embarrassment. *Id.* Additionally, Simpson highlights that the only relief he seeks is the removal of the hydrocel, and not monetary damages. Corizon moved for summary judgment on September 22, 2020. Simpson responded on October 13, 2020. Corizon replied, and, on November 16, 2016, Simpson filed a sur-Reply without prior authorization of the Court.[3]

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3] Although his sur-Reply is procedurally improper, Simpson is pro se, and is not held to the same standard as admitted or bar licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court will accordingly consider Simpson's sur-Reply on summary judgment.

Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). However, the respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. ANALYSIS

At issue is whether Simpson has exhausted his administrative remedies and whether Simpson can withstand Summary Judgment with respect to his deliberate indifference claims against Corizon.[4] Simpson's claim fails in both respects.

### A. Exhaustion of Administrative Remedies

Inmates must exhaust administrative remedies before bringing a claim under

---

[4] Corizon also argues Simpson failed to prosecute his case under Federal Rule of Civil Procedure 41(b). Although procedurally flawed, the Court will focus on more substantive issues.

Section 1983.  42 U.S.C.A. § 1997e(a); *see also Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (holding, "[t]he bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances."). District Courts are required to dismiss actions without prejudice under the Prisoners Litigation Reform Act ("PLRA") if an inmate fails to exhaust administrative remedies before filing suit with the court. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Proper exhaustion occurs when the inmate follows all of the steps provided by the agency, and does so properly, "so that the agency addresses the issues on the merits." *Woodford v. Ngo*, 548 U.S. 81, 90 *quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024.

Here, Simpson was required to use the IDOC Grievance Process outlined in IDOC Division of Prisons Standard Operating Procedure 316.02.01.001 ("SOP 316"). Dkt. 18-2, ¶ 21. This resolution system has three components. First, the inmate submits an Offender Concern Form, which must be handwritten and must clearly explain the issue. *Id.* If the issue is not resolved at this stage, the inmate can submit a Grievance/Appeal Form. *Id.* Grievances must be filed within 30 days of the incident and the inmate must attach the Offender Concern Form with the staff's response. *Id.* Finally, if the inmate disagrees with the answer to the Grievance/Appeal Form, the inmate can appeal. *Id.* The inmate must write the reason for appeal at the bottom of the returned Grievance/Appeal Form within 14 days from the review authorities' decision. *Id.* Only after the completion of this process may an inmate file a civil rights complaint with the Court.

Simpson filed three Offender Concern Forms on February 18, 2019, February 20, 2019, and February 25, 2019, requesting medical services for what he thought was a hernia.

Dkt. 3-1. A staff member responded to each of the Offender Concern Forms. *Id.* On March 4, 2019, Simpson filed a Grievance/Appeal Form, which again requested that medical staff "take care" of what Simpson though was a hernia. *Id.* On March 13, 2019, Taylor Hensen, the Level 1 Responder, answered the grievance by explaining that continuing care and monitoring would be provided. *Id.* On March 29, 2019, Amanda Shriver, the Level 2 Responder, reinformed Simpson that a follow-up appointment was scheduled for April. Simpson never appealed this response to Level 3 as required by the IDOC Grievance Process. On July 24, 2019, Simpson filed his Complaint with the Court.

Exhaustion of administrative processes are mandatory under the PRLA. *Jones v. Bock*, 549 U.S. 199, 204 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Simpson was required to complete all three steps detailed by SOP 316 before filing suit. Simpson followed the first two steps by submitting an Offender Concern Form and then subsequently submitting a Grievance/Appeal form. However, Simpson never completed the third step by completing the Appeal section of the Grievance/Appeal form after the Level 2 Responder provided a response. Therefore, Simpson failed to fully exhaust his administrative remedies before filing his complaint with the Court.

Even if the procedural grounds for dismissal were not present here, there are independent substantive bases for granting Corizon's motion for summary judgement.

**B. Eighth Amendment Claim**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner

MEMORANDUM DECISION AND ORDER - 7

must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a prisoner plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir.2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

As for the objective standard, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

As to the subjective standard, a prison medical provider acts with "deliberate indifference . . . only if the [provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) *overruled on other grounds in Castro v. Cty. of Los Angeles*, 290 F.3d 1175 (9th Cir. 2002), (internal quotations and citations omitted). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980) (per curiam).

Simpson was seen multiple times by both onsite and offsite physicians regarding his

hydrocele. In each of these appointments, the physicians deemed the hydrocele to be a non-urgent medical condition. PA Starrs attended to Simpson's concerns on multiple occasions, and requested appropriate follow-up care to confirm his assessment of the hydrocele. After Simpson complained of increased pain, PA Starrs requested that Simpson see a surgical specialist. Simpson was then seen by an offsite surgical specialist, Karin Schmidova, M.D., at Clearwater Valley Medical Clinic. Dr. Schmidova found nothing urgent about the hydrocele but referred Simpson to a urologist because of his symptoms. After treating Simpson, offisite urology specialist, David Rice M.D., determined the surgery was an unnecessary elective procedure.

Simpson requests injunctive relief, specifically asking the Court to order Corizon to remove the hydrocele. Injunctive relief is only appropriate when the plaintiff shows immediate threatened injury. *See Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."). Because removal surgery is not urgent or necessary, there is no immediate threatened injury to Simpson. Thus, injunctive relief is not appropriate.[5]

With respect to Simpson's claimed constitutional deprivation, the above-described medical history illustrates that Corizon providers did not act with deliberate indifference

---

[5] Moreover, in cases like this one, which are governed by the Prison Litigation Reform Act, "injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the lease intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 999 (9th Cir. 2000).

under the Eighth Amendment. Corizon staff responded to each of Simpson's HSRs and referred Simpson to offsite specialists when necessary. Simpson's hydrocele has been monitored since his first request to have the condition checked, and Simpson was placed on a pain management plan. All care relating to Simpson's hydrocele was appropriate. As PA Starrs stated, the risks of surgery outweigh the benefits. Additionally, Simpson has not shown that the treatment plan devised by Corizon staff consciously disregarded an excessive risk to Simpson's health and safety.

Ultimately, upon an exhaustive review of the record in this case, the Court finds as a matter of law that Corizon did not act with deliberate indifference to Simpson's serious medical needs. Summary judgment is, therefore, appropriate.

Simpson's claim also fails as a matter of law under *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978). It is a long-standing principle that there is no vicarious liability in § 1983 actions. *Id*. To assert a § 1983 claim against a private entity—such as Corizon—a Plaintiff must meet the test articulated in *Monell,* which requires that the Plaintiff show: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.,* 237 F.3d 1101, 1110–11 (9th Cir. 2001).

For an entity to be found liable under *Monell*, the unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell,* 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–

168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996).

Simpson's claim against Corizon—the only named Defendant—fails to meet each required element of a *Monell* claim. First, as previously discussed, Simpson was not deprived of a constitutional right because Corizon appropriately addressed his medical needs. In addition, Simpson has never identified any custom or policy of Corizon—let alone a policy which amounted to deliberate indifference to his constitutional rights. As such, he fails to meet the second and third elements of *Monell* as well. Fourth, in the absence of either a constitutional injury or a custom or policy, Simpson cannot establish the custom or policy was the moving force behind his alleged injury.

In addition to his inability to establish a constitutional violation, Simpson's allegations are insufficient to allege a *Monell* claim in the absence of identification of a policy or custom. *Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (explaining, complaints "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend itself effectively.").

Simpson's failure to identify the requisite policy or custom in either his initial Complaint, his Response to Corizon's Motion for Summary Judgment, or his sur-Reply, is an additional reason the Court must enter judgment in favor of Corizon.

MEMORANDUM DECISION AND ORDER - 11

Having considered the procedural and substantive grounds for dismissal outlined above, the Court GRANTS Corizon's motion for summary judgement.

## V. ORDER

The Court HEREBY ORDERS:

1. Defendant Corizon's Motion for Summary Judgement (Dkt. 18) is GRANTED.

2. The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 19, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 12